# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **ONEISHA LEE,**  Plaintiff**,**  vs**.**  **WAL-MART INC.,**  Defendant**.** | CIVIL ACTION FILE NO.:  1:21-cv-05177-WMR-JSA  **JURY TRIAL DEMANDED** |

## PLAINTIFF'S COMPLAINT

COMES NOW Plaintiff Oneisha Lee (hereinafter "Ms. Lee"), and files this, her Complaint for Damages against Defendant Wal-Mart Inc. showing the Court the following:

### Introduction

The day after reporting to Club Manager Ray Shannon that she and multiple female co-works had been sexually harassed by Fresh Service Manager Doug Walker (whom was friendly with Mr. Shannon), Walmart terminated Ms. Lee's employment. Walmart terminated Ms. Lee's employment on the pretextual grounds of buying marked down items. Yet, Ms. Lee was instructed by Walmart Management that this was a perfectly acceptable action, was never instructed to the

1

contrary, and many, many other employees and managers repeatedly and often engaged in this same activity, but were not disciplined or terminated.

## PARTIES

1. Plaintiff is a female citizen of the State of Georgia. Plaintiff submits to the jurisdiction of this Court. At all times relevant to this action, Plaintiff was an "employee" of Walmart, as defined by Title VII.

2. At all times pertinent to this action, Walmart was an "employer" within the meaning of Title VII.

3. Walmart can be served with process via its registered agent, The Corporation Company at 106 Colony Park Drive Ste. 800-B, Cumming, GA, 30040-2794.

## JURISDICTION & VENUE

4. The court has jurisdiction over this case pursuant to 28 U.S.C. § 1331 in that this is an action arising under the laws of the United States.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) and §2000e-5(f)(3) because the unlawful employment decision was made by and ratified by Walmart employees in whole or in part within the Northern District of Georgia, Atlanta Division and because Walmart resides in the Northern District of Georgia, Atlanta Division and because Walmart has contacts in the Northern District of Georgia,

Atlanta Division sufficient to subject it to personal jurisdiction if that district were a separate State.

6. On January 16, 2020, Ms. Lee timely filed EEOC Charge No. 846-2019-25200 alleging discrimination based on sex and retaliation in violation of Title VII.

7. The EEOC issued a right to sue on September 24, 2021 that was received by Ms. Lee several days later.

8. Ms. Lee has exhausted her administrative remedies and timely files this Complaint.

**FACTS**

9. Walmart hired Ms. Lee on February 11, 2019 as a Fresh Service Manager at the Sam's Club located in Macon, Georgia.

10. Ms. Lee was an excellent employee who did not receive any written discipline during her employment with Walmart.

11. Douglas Walker, another Walmart manager, sexually harassed multiple female employees, including Ms. Lee.

12. As an example of his sexual harassment, Mr. Walker offered a female Walmart employee a quid pro quo of sexual intercourse with him in order to get her job back.

13. Mr. Walker also sent numerous sexually explicit text messages to a female co-worker. Some of these text messages contained shadows of a penis on a woman's face and others contained propositions for sex.

14. On another instance, Mr. Walker sexually harassed Ms. Lee with crude comments relating to her pregnancy. Ms. Lee's bakery team members received new utensils for decorating cakes and could not figure out how to assemble them. Ms. Lee went to Mr. Walker for help. He responded that the utensils are assembled, "The same way you got pregnant, you stick that one into that one and you screw."

15. Mr. Walker also made references to Ms. Lee's rear end, while the two were working.

16. Another female associate refused to work in Mr. Walker's department (the fresh department) because she was afraid to work within him because of things he said to her.

17. On August 5, Ms. Lee told Club Manager Ray Shannon that Mr. Walker had sexually harassed multiple team members, including herself. Ms. Lee informed Club Manager Shannon that the sexual harassment caused female employees to not want to work in Mr. Walker's department. Ms. Lee also informed Club Manager Shannon that Mr. Walker had taken photos of female employee's rear end and made unprofessional, sexual remarks while walking behind them.

18. Club Manager Ray Shannon ignored Ms. Lee's attempt to report sexual harassment by telling her that he "does not deal with drama."

19. Ms. Lee told Club Manager Ray Shannon that if she took the concerns to corporate they would be handled differently.

20. Club Manager Ray Shannon's response was, "You know, you can cause me to lose my job."

21. Club Manager Ray Shannon had remarked to other employees that women were difficult to work with.

22. The day after Ms. Lee went to Club Manager Ray Shannon with these sexual harassment allegations, she was fired.

23. During her termination meeting the next day, Ms. Lee directly inquired to all managers present as to whether the termination was related to her report of sexual harassment the prior day. Neither of the two managers present responded to this allegation, and instead proceeded with her termination.

24. Walmart ultimately terminated Mr. Walker for sexual harassment, but not for several months thereafter.

25. Following her termination, Ms. Lee diligently looked for work and has found work but it has not provided comparable pay and benefits.

## WALMART'S PRETEXUAL BASIS FOR TERMINATION

26. On August 6, 2019, Ms. Lee was called to the marketing office to meet with Daryl Stinson and Club Manager Ray Shannon.

27. Ray Shannon was present throughout Ms. Lee's termination meeting and signed the Separation Notice.

28. Ms. Lee informed Mr. Stinson that her prior club manager Derrick Jordan told her that associates could purchase marked down items with a membership card. She also informed him that many other employees rampantly purchased marked down items, and that this was an accepted practice at their store.

29. Many other Walmart employees acted similarly to Ms. Lee and engaged in substantially similar conduct, but Walmart did not terminate their employment. Managers and associates alike commonly purchased discount merchandise. For example, the overnight manager frequently dropped this same type of merchandise from the steel and allowed associates of all levels to purchase.

30. Approximately a week after store manager Ray Shannon announced Ms. Lee's termination, he called a meeting with the remaining members of management along with Darryl Stinson. They reviewed each manager's previous purchases, and were aware that all had purchased discount items just like Ms. Lee, but did not terminate any of them.

31. Upon information and belief, all managers had at one point purchased discounted merchandise but only Ms. Lee was terminated.

32. Despite this widespread activity, only Ms. Lee was terminated. No other managers were even disciplined for engaging in the same activity.

33. Further, Ms. Lee's Separation Notice states that Ms. Lee was terminated for: "Gross misconduct. The associate purchased .51 cent items after being directed on how to handle these type of items and markdowns."

34. Walmart's assertion that Ms. Lee had been directed on how to handle discount and markdown items is false. Prior to her termination meeting, Ms. Lee had no awareness that her conduct allegedly violated Walmart policy. On the contrary, her prior manager Mr. Jordan had informed her this was acceptable, and the management team at her location was never briefed on any purchasing rules until after Ms. Lee's termination.

35. Ms. Lee did not complete her new Walmart new hire training and did not receive training on the associate purchase policy.

36. In the termination meeting, Daryl Stinson printed off bits and pieces of the markdown guidelines and had Ms. Lee sign them. The day of her termination was the first day Ms. Lee signed, read or knew anything about the markdown policy.

37. Ms. Lee engaged in Walmart's open door process to raise a grievance

regarding her termination but Walmart ratified the illegal behavior of its managers, and refused to reinstate her employment.

## **COUNT I—RETALIATION IN VIOLATION OF TITLE VII**

38. Plaintiff realleges the above paragraphs and herein incorporates them by reference to this count.

39. Defendant is an employer within the meaning of Title VII, which applies to all private, state and local government employers with more than fifteen employees.

40. Plaintiff has made a timely filing(s) with the EEOC and has received a Right to Sue letter from the EEOC, and files this complaint within ninety (90) days of same.

41. Plaintiff engaged in protected conduct during her employment by, among other things, reporting sexual harassment of multiple female employees on August 5th.

42. Plaintiff subsequently experienced temporally proximate adverse employment actions.

43. Defendant retaliated against Plaintiff by terminating her employment because Plaintiff engaged in statutorily protected activity. This conduct is prohibited by Title VII of the Civil Rights Act of 1964.

44. Defendant knew that federal law prohibits discrimination, and willfully and/or recklessly disregarded Plaintiff's federally protected rights in its termination of Plaintiff.

45. Due to Defendant's unlawful actions, Plaintiff was injured and is therefore entitled to punitive and compensatory damages, back pay, prejudgment interest, reinstatement or front pay, attorney's fees, costs, and further relief in an amount to be determined at trial.

## COUNT II - TITLE VII DISCRIMINATORY TERMINATION

46. Plaintiff realleges the above paragraphs and herein incorporates them by reference to this count.

47. Defendant is an employer within the meaning of Title VII, which applies to all private, state and local government employers with more than fifteen employees. Further, Plaintiff has made a timely filing(s) with the EEOC and has received a Right to Sue letter from the EEOC, and files this complaint within ninety (90) days of same.

48. Defendant engaged in discrimination based on sex in the terms and conditions of Plaintiff's employment in violation of Title VII of the Civil Rights Act of 1964, including but not limited to terminating Plaintiff because of her sex.

49. Defendant knew that federal law prohibits discrimination, and willfully

and/or recklessly disregarded Plaintiff's federally protected rights in its termination of Plaintiff.

50. Due to Defendant's unlawful actions, Plaintiff was injured and is therefore entitled to punitive and compensatory damages, back pay, prejudgment interest, reinstatement or front pay, attorney's fees, costs, and further relief in an amount to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a TRIAL BY JURY and judgment as follows:

a) adjudging Walmart to have engaged in unlawful employment practices in violation of Title VII;

b) awarding Plaintiff back pay, compensatory damages and punitive damages for violation of her statutory rights, in an amount to be determined by the enlightened conscience of the jury;

c) awarding Plaintiff pre- and post-judgment interest;

d) awarding Plaintiff her costs, expenses of litigation and reasonable attorneys' fees; and

e) awarding Plaintiff all other relief to which she is entitled.

Respectfully submitted, this 20th day of December, 2021.

/s/ Douglas Kertscher
Douglas R. Kertscher
Georgia Bar No. 416265
Julie H. Burke
Georgia Bar No. 448095

Hill, Kertscher & Wharton, LLP
3625 Cumberland Blvd.
Suite 1050
Atlanta, GA 30339
404-953-0995 (ph.)
404-953-1358 (fax)
drk@hkw-law.com
jb@hkw-law.com